We now have both council present and ready for Williamson v. City of National City and again your time is your total time and you may watch the clock for keeping track of any rebuttal that you may wish to use. So with that you may begin whenever you're ready. Thank you. Good morning. Lee Roystacker for the appellants. My plan is to reserve five minutes for rebuttal time and I'll keep an eye on the clock. The district court in this case erroneously denied my client's qualified immunity summary judgment motion for two reasons. Under the factual record established by the district court it's certainly our position that there was no Fourth Amendment violation but even if there was there was no clearly established law. May I ask you a question about your alternative? As I understand it and I'm not in any way an expert on California law but as I understand it the state law claim under the Bain Act does not rely on the qualified immunity prong of clearly established law. Am I right about that? So that's not part of the analysis? That wasn't a very clear question. If there's excessive force under the Bain Act is that sufficient without regard to whether the law was clearly established? Well I will say this. For purposes of the appeal and to ensure jurisdiction over the Bain Act claim you're right that if there's a Fourth Amendment violation as the as the case is briefed that would get rid of the Bain Act but if there is a question about that and qualified immunity is granted on the fact that the law is not clearly established that doesn't automatically eliminate the Bain Act claim. Okay that's what I was getting at. You said it more coherently than I do but thank you. I appreciate that. So if we found qualified immunity but on the Bain Act we would actually have to find no Fourth Amendment violation? To eliminate the Bain Act claim? Correct. So let me ask you why couldn't a jury reasonably find that the officer's decision to yelling in pain rather than stopping and securing her in a more comfortable position have constituted excessive force under these circumstances? Well I think I mean could a jury under could a jury concluding that that was excessive force in my opinion would not be following the law. We're presented with a circumstance where they are in a chaotic situation as the videos depict. They need to get her and the other protesters out of the room. None of them will leave. None of them will comply. They're employing deadweight tactics. They attempt to lift her up and her deadweight tactics take her back down to the ground. They have to get her out of the room and they have to get her out of the room quickly. And they chose the manner in which they did to remove her by dragging her out. Now when you say quickly, were people from the audience throwing things at the officers? Well I don't believe they were throwing things at least at that point. But at least my view of the videotape certainly shows a situation that was quite chaotic and could have turned something else at any minute. Now I think it's important with your question, I think it's important just to review some Fourth Amendment principles that apply to this, the question of whether the force used was unreasonable. The court has never held that no passive, no force can be used against a passive resistor. I don't think that's her claim. I think you know the the crime was a minor crime in the sense that it was a misdemeanor, a disturbance of a public meeting is a misdemeanor. There was no immediate threat to anyone. There was no active resisting arrest, no attempt to flee from the police. And so this is a person who's screaming in pain and you think that's okay to just ignore that and keep going and then that no jury could as a matter of law find that that's excessive? Well I think the well first of all the fact that someone's screaming in pain doesn't necessarily or screaming I should say doesn't necessarily indicate to the officers that someone is actually in pain. People being arrested make a lot of noise. I know that she suffered a broken shoulder after the fact that was learned but they have to get her out quickly and that's what they did. They didn't drag her completely around the room but let me say this could there have been other ways potentially they could have taken her out of the room hypothetically that in retrospect would have been better? Yeah maybe maybe that happens but because there are other ways doesn't mean the way that it was done was unreasonable. Reasonableness from the long as the conduct falls within the range of reasonableness there's no violation. But we have to take the facts in the light most favorable to the plaintiff and when you say for example well she was screaming but maybe she wasn't in pain don't we have to take it that her screams and her claims of pain were genuine? Well in retrospect they certainly were Well I'm asking you a different question I'm saying for purposes of summary judgment which is where we are on the Bain Act claim at least. Don't we have to interpret the facts in the light most favorable to her? I would that is true that is correct but but I don't think the fact that there's pain involved in a in removing her from the room automatically equates to a Fourth Amendment violation. It's not a matter of automatic see that's the problem the question is whether there's a an issue a genuine issue of fact the only as a matter of law would have to be on your side of the equation so you're saying it doesn't automatically equate to excessive force but that isn't the consistent with the law could find excessive force in this situation? Well let's look at Forrester for a minute because I think that's that's an apt comparison. In Forrester where this court found the force used reasonable protesters were removed by officers when they took their nunchucks which the two wooden sticks connected with a cord they wrapped them around the person's wrist and progressively made it tighter intentionally causing pain to get them but counsel Forrester didn't hold anything more than that the jury's verdict was consistent with the evidence that it was a permissible verdict it did not say that that had to be the verdict as a matter of law I don't see how it's even particularly relevant to our situation other than to say this person might lose in front of a jury as did the person in Forrester but it didn't establish as a matter of law that that was not excessive. Well I it was after a jury verdict correct but I think it informs on the type of force that can be used legitimately against a passive resistor. Well I the other thing I guess that I'm I the question I have too is it seems to me inherent to your argument is a little bit that that the plaintiffs behavior caused the problem and I think the cases that you cite in support of your argument on Williamson's relative culpability appear to involve situations where the arrestee is fleeing or actively resisting arrest. Do you have any authority for the proposition that someone passively resisting can be considered relatively culpable for injuries suffered during the arrest? Yeah there there is no there is no authority for that and I the reason is I don't think this court has addressed it but on that point I'm not sure I don't think it really matters it I don't think it really matters whether somebody is fleeing or being dangerous and looking at their relative culpability because there is relative culpability in the conduct that she undertook. This all literally could have been avoided had she gotten out of the room and so it really was I mean it was passive resistance but there was also the fact that she just didn't get up and walk out on her own. Well counsel you know every every excessive force case where there's an arrest involved could be avoided if the person didn't commit the crime and that's what you're saying because her crime was disrupting a public meeting and if she'd gotten up and left you're right but I guess that doesn't really seem to be responsive to the question whether once you have committed a crime and you're being arrested what what is sufficient to go to a jury on excessiveness. I would say this in that scenario she was arrested after she was handcuffed and on the ground and fact is she could have gotten up and left at that point. I understand the court's argument I or the court's position on that I'm looking at my time I'm under I'm over 10 minutes and I could save the qualified immunity clearly established part for my rebuttal but I do want to you can use your time any way you wish. Let me just touch on that for a minute. The courts well familiar with the qualified immunity standards that the Supreme Court has laid out. The plaintiff has the burden in that respect to show a case that's sufficiently similar to put all reasonable officers on notice that the conduct was unconstitutional. The issue has to be beyond debate. All the case law cited by the plaintiff what what it does establish is that non trivial force can't be used against a passive resistor but the force here was not non trivial. It wasn't tasers, it wasn't blows, it wasn't baton strikes, it wasn't a throwdown, it wasn't pepper spray, it wasn't a beanbag to the face. It was dragging her out of the room. So the question is where is the case that would tell the reasonable officer that dragging somebody out of the room out of a meeting room that's been arrested is unconstitutional? Where is the case that talks about minimal or trivial force being unconstitutional? None of the cases cited by the plaintiff certainly nothing cited by the district court but none of the cases cited by the plaintiff establish that and I'll reserve the rest of my time for rebuttal. Certainly you may do that and we'll hear from Mr. Roystocker. I hope I didn't mispronounce your name. You pronounced my name right but I believe it's. Oh I'm sorry it's Mr. Gilliland's time. You're muted still. I said no problem your honor I've been called worse. So the appellants cases is as I understand it that their argument before the court is that there's no Fourth Amendment violation and there's no and there's no clearly established case but it sort of skips over what my first argument was in this case and that qualified immunity protects all everybody except those that knowingly violate the law or are sorry I'm just looking at my notes here clearly incompetent and in this case I don't even think we get to qualified immunity on you know I don't think we need to look at the cases and try to figure out what's going on even though that I believe those are in my favor you know in this case. Mr. Gilliland I'm concerned if for me to buy your argument I'm concerned over the fact that obviously passive resistance isn't completely innocuous. It's very hard to move people that are dead weight. They are it in fact it's it is a resistance of sort anyone that's tried to move someone that is dead weight knows that it's it's really hard and they are increasing their likelihood of injury so when the officers are confronted with a situation where they have people that that is their resistance to be dead weight and they have to get something cleared up and I recall that there were some there there was a need to get people out quickly it happened very fast why should someone becoming dead weight should they be allowed to use that in their favor when it's making the officer's job so much harder. Well I think we've had their chance of injury there there's no two ways about that. Yeah and I think we've had passive resistance in this country as long as we've had civil rights cases. This is a technique it's nonviolent it has been advocated by some of the best civil rights activists for decades and it's a to make your point and for these officers to look at Miss Williamson who they considered was sort of the the catalyst behind all this I mean she was clearly treated differently than all the other the people there and so dead weight I mean I've watched that video how is she treated differently? Well if you look at the protesters that were removed before her they were picked up underneath their arms and they were using dead weight too and they lifted them up under their arms not hyper extending their shoulders to any degree whatsoever and you'll see in the video they're drug out but they're drug out in a respectful manner and they're drug out in a way that does not hyper extend your shoulders and tear the labrum or rotator cuff. When it was time to get Miss Williamson who these defendants know were the the leader of this group they handcuffed her and then they turned around and they drug her backwards instead of lifting her up like they did with all the other protesters and I think it's also important Judge Forrest to add that there were two more protesters that were taken out after Miss Williamson so I hear a lot about oh there was chaos and nobody was throwing anything yet nobody threw anything ever by the way but it was chaos and we needed to move quickly there was no chaos that there was there were more police officers in the room than there were protesters. What in the record tells us that the officers thought or believed that your client was the leader of this event? Well I think it's a disputed fact I think it's a disputed fact that's something that we've alleged but you can't just allege that without some sort of factual basis so that's what I'm asking what in the record indicates that that's the truth or that it is your client's assertion? Yeah that's right. She's done nothing just just her opinion. Yes she organized this she was arrested the month before and she came back and she still wanted to support this family and get the body-worn camera of the their deceased loved one and she was targeted but that's not really here nor there Judge Forrest I didn't mean to sort of go on a tangent there regardless of the officers intent to hurt her what we're looking at is the way she was treated in an objective fashion and she's being treated in such a way that was clearly different than everybody else and again now after she's drug out screaming drug by the wrists they have two more protesters to remove the officers went back into the room and they've removed the final two protesters in a very because I didn't I didn't understand that that was going to be your position my question before hearing this was going to be what would you have had the officers do different I mean I think that I mean speaking for my colleagues I think we would say you know we understand the significance of what your client was doing here and that the law you know recognizes peaceful protest and that we kind of have to tread lightly in that context because that's a function of our free society but at the same time you know we can't allow activity to shut government function down so what would the what were the officers supposed to do and is your argument simply they should have taken her out like they took everyone else out I mean I'm not sure I agree that they treated her differently I'll have to guess go watch the video again because I certainly didn't see that first time but but is that your position that they should have just taken her out the way they took the other people out well I think if they treated if they took her out just like they took everybody else out I don't think we would be here so to answer your question yes that is we have a precedent in the Ninth Circuit that says the officers are not obligated to use the least intrusive means they're obligated to act reasonably so so how is it that by you know we'll assume for purposes of my question that something was done with miss Williamson how is it that their actions were not reasonable what I do was in my brief mr. Roe stature talked about the lack of cases to support plaintiffs position to answer your very question judge force and he says that the non-trivial force doctrine is the only doctrine that plaintiffs advance which is untrue we advance a line of cases about causing unnecessary pain during arrest and that's what this is and this court is replete with decisions about causing unnecessary pain during arrest now I'm not abandoning the non-trivial force doctrine I think it's very important and I think it applies but when you talk about you know what could these officers have done we have the case of Techley we're pulling a kid's hands up his handcuffed arms pulling them up pulled him up off the curb a jury can find that that's excessive force we have mr. wall who was just getting an oil change and he was thrown against the hood of the car and his arms were cuffed and they were lifted we have Meredith she was being investigated for filing false tax returns she was thrown to the ground her arms were twisted causing marks causing her to go to the ER and then we have winter rod which was pulled over for expired license tabs and when he was taken out of the car his arms were pulled up I mean it's it's an unnatural motion it's an unnatural motion and I think respectfully that the appellants position lacks a little bit of common sense because if anybody is handcuffed and they're taken by the wrists and their arms are lifted up everybody knows what the response is it's out out out it's only done to administer pain and so they use this technique I'll call it to to drag her out of the room and it is causing unnecessary pain during arrest that's the clearly established case law in this case well if they let's say if let's assume that if we go look at the video and they did the same with maybe she behaved differently and that's why she was injured do you still have a claim I'm sorry judge Callahan well let's say they used the same technique to remove everyone let's assume and when you say same technique you mean to handcuff and drag them by the wrists or what was different about how they removed your client than everyone else she was handcuffed and drugged backwards by the wrists for about 30 40 feet on the ground the other ones were were were lifted up underneath the armpits like this they're lifted up and you can see them their feet are trailing they're dragging on the ground but they lift them up and they're carrying them out so why did they have to handcuff your client and they could just let the other people to be fair I think they handcuffed everybody they handcuffed everybody but my client was the only one they drug backwards by the handcuffed wrists what if your client let's just say she'd had rotators problems before and but ever if ever if we thought that everyone was treated basically the same is the officer then still culpable if someone's like more say an eggshell plaintiff as opposed to a stronger person I was just gonna say in that hypothetical I think we would be arguing the eggshell plaintiff rule I haven't researched it and I don't know how that comes out but it's not well let me ask you I think to follow up with judge Callahan's hypotheticals if if they had treated your client the same way and lifted her up under her armpits but she had some kind of you know horrible problem under her armpit that they wouldn't have known about there might not be excessive force even in your view I take it of course it's everything is fact-driven but I tend to agree with you yeah I mean my case is that look how they've you know they treated her differently they treated her in a way that causes unnecessary pain and so to be honest with you I don't know what we would be arguing if she had some sort of armpit if they if they picked her up like that but I also don't want and I hope I've answered your questions adequately I also don't want to lose sight of the fact that that you know the first argument in our brief is that these officers were either incompetent or knowingly violating the law and I think that the one way that that you can look at this case is looking at their police reports okay I mean there is a famous quote from the late 18th 1800s you know the problem with police reports is the people that do the shooting write the reports we have in this case both officers that drug her backwards by her wrists both put in their police reports that for officer Nguyen I put my arm under Miss Williamson's left arm while holding on to Miss Williamson's upper arm area we began to carry her out of the room which was a few feet away few typically meaning three it's not true and then officer McGuff writes the exact same thing just in in reverse it was me doing it and we lifting we lifted her up by her her armpits by her upper arms they wrote what they know they should have done and the question is why did they lie about it and they lied about it because they know they shouldn't have done it this way and instead of National City looking at the police reports and comparing it to the video and going Oh son of a gun it looks like it really was more than three feet I don't think these officers are telling the truth they don't withdraw these these reports they make it sort of the centerpiece of this case and and I think it's terribly dangerous to do that and then you've got the sergeant you know there's such a such a hurry to get Miss Williamson out of the room but as soon as they got the other two protesters out they brought her right back in and sat her in a chair so I'm not sure what the big emergency was but then that's when the sergeant said Oh McGuffin to win they weren't even in the room when this happened and then you saw the plain clothes detective who was shielding from view looking at Miss Williamson as they're dragging her and he's sidestepping going along like this blocking the all the cameras from videotaping what's going on he tells Miss Williamson hey look I didn't see what happened I'm sorry I had my back I had my back to what was going on because I was trying to shield this crazy crowd from from attacking us so the question is why were the other officers lying about it and the answer is because they know that what they were doing was against policy it was unlawful and again that's my first argument now we don't even get to qualified immunity we don't even get to to to the excessive force or excuse me I take that back we don't get to qualified immunity because of what these officers did I mean I think by its terms knowingly violating the law and being incompetent is a subjective inquiry and we need to look on a subjective inquiry about what the officers did and what they wrote about what they did to try to get into their minds and I think in this in this case qualified immunity does not protect them I'm conscious that I'm running out of time but I will say that in Emmons versus Escondido the Supreme Court per curiam said that what the Court of Appeals quote the Court of Appeals should have asked whether a clearly established law prohibited the officers from stopping and taking down a man in these circumstances and I think that that's what we need to do in this case we need to take a look at the cases I've cited and to determine whether clearly established law prohibited the officers from doing this and it does under the non-trivial force doctrine and it does under the unnecessary causing of pain now I should also say unnecessary causing of pain I just cited to you the cases just related to handcuffing someone and jerking the hands up there's many but I mean there's even a body of case law with regard to jerking the hands up you know with that I'll submit thank you counsel Mr. Roestocker I'm back to you intentionally now for your rebuttal time thank you I'm limited in time so a couple quick points you know the district court said this defendants Nguyen and Magoo dragged plaintiff backwards by the arms from the podium to the exit door plan wishes it was solely by the risk but it simply wasn't that's the factual record treating somebody different doesn't mean the way you treated them constitutes excessive force and no but it does it does suggest that there was a intrusive to the body alternative which you had said earlier well that isn't necessarily required but it may inform what a jury could conclude well I would say this if you look at the video they tried to lift her up under her armpits in the way they carried the other protesters out and she fell down they wearing a bulletproof vest and a bulky sweatshirt she was different in size than some of the other protesters and that you know that sort of goes on to the issue that judge Callahan raised about passive resistance to me passive resistance is somewhat of a misnomer because you are using your body weight to resist the officers efforts to get you under control you know and that's what happened in this case they tried to pick her up on her armpits she went dead weight and they simply couldn't hold her and she went back down to the ground and then they pulled her over and removed her in the way that they did I want to ask you one other excuse me one other question and that has to do with the question about using warnings to people which was discussed in Rice that the availability of less intrusive alternatives is discussed and whether proper warnings were given is there anything in your view in the record that says that at the time they in your view determined that they could not lift her the way they lifted others that she was warned that if she didn't cooperate they were going to drag her by the wrists or arms with her handcuffed arms I don't know there's there's certainly a lot of evidence in the record that they were all warned several times that they would be removed that they were going to be arrested that's not my question when they found they couldn't lift her up comfortably did they warn her that if she didn't cooperate they were going to use a means that might harm her I know there's nothing in the record that says at that exact point in time they said this is how we're going to remove you but I again that I go back to what Judge Forrest said is the case law is clearly in the Ninth Circuit that you don't have to use the least intrusive force and I don't think that simply because something was caused and an injury occurred doesn't mean doesn't as it as a matter of law if the force if the option is within the range of reasonable conduct the fact that an injury sustained doesn't make it a question for the jury to determine whether there was excessive force I am somewhat the plaintiff to me my colleague seems to be advancing the position that the force used here is something equivalent to non-trivial force and it's just not it is nowhere near the force who decides that are you saying it's that's a matter of law or is that a matter of fact because you know pulling someone back by their arms can be quite painful to almost everyone so how who decides whether it's non-trivial are you saying it's a matter of law yeah I think that the level of force used as a matter of law I think this court has always taken force and classified it in one way or the other not always consistently there's minimal there's everyone knows what deadly or lethal forces but then there's intermediate force or significant force then there's minimal force there are different levels and I think isn't it's a matter of law what a particular type of force where what category that fits in otherwise you're going to have wildly different interpretations on what type of force constitutes what level and I think that that really feeds into the lack of established body of law going clearly showing that what the officers did here was unconstitutional thank you counsel you've exceeded your time by quite a bit the case just argued is submitted and we thank both of you for very helpful arguments in this challenging case and with that we are adjourned for this session thank you thank you very much I have one question do we need to the cases yesterday put those on the record as submitted I don't think we have to okay that's fine I didn't do that with Monday so okay
judges: Graber, Callahan, Forrest